**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

Guy R. Humphrey
United States Bankruptcy Judge

**Dated: January 15, 2021**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hopedale Mining, LLC, *et al.*,[1] | ) | Case No.  1:20-bk-12043 (GRH) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Honorable Guy R. Humphrey |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE JOINT PLAN OF ORDERLY LIQUIDATION [RELATED TO DOCKET NOS. 529, 530]**

**THIS MATTER** came before the Court for hearing on January 15, 2021 at 10:30 a.m.

(E.T.) (the "**Confirmation Hearing**") to consider: (i) confirmation of the *First Amended Joint*

*Plan of Orderly Liquidation of Hopedale Mining LLC and its Affiliated Debtors under Chapter*

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Rhino GP LLC (8619), Rhino Resource Partners LP (7517), Rhino Energy LLC (6320), Rhino Trucking LLC (8773), Rhino Exploration LLC (8863), Triad Roof Support Systems LLC (1183), Springdale Land LLC (9816), McClane Canyon Mining LLC (3783), Rhino Northern Holdings LLC (1858), CAM-Ohio Real Estate LLC (1859), CAM-Colorado LLC (4269), Taylorville Mining LLC (5106), CAM Coal Trading LLC (4143), Castle Valley Mining LLC (9495), Jewell Valley Mining LLC (0270), Rhino Services LLC (3356), Rhino Oilfield Services LLC (8938), Rhino Technologies LLC (0994), CAM Mining LLC (2498), Rhino Coalfield Services LLC (3924), Hopedale Mining LLC (9060), CAM-Kentucky Real Estate LLC (9089), CAM-BB LLC (9097), Leesville Land LLC (7794), CAM Aircraft LLC (5467), Pennyrile Energy LLC (6095), Rhino Eastern LLC (1457), Rockhouse Land LLC (7702).

11 of the Bankruptcy Code (Docket No. 529) (the "**First Amended Plan**"), as amended as set forth in this Order and the *Memorandum in Support of Confirmation of First Amended Joint Plan of Orderly Liquidation of Hopedale Mining, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (Docket No. 573) (the "**Confirmation Memorandum**," and collectively with the First Amended Plan, the "**Plan**");[2] (ii) the approval, on an final basis, of the *First Amended Joint Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Joint Plan of Orderly Liquidation of Hopedale Mining, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (Docket No. 530) (the "**Disclosure Statement**") filed by the above-captioned debtors and debtors-in-possession (the "**Debtors**") and the Official Committee of Unsecured Creditors of the Debtors (the "**Committee**," and collectively with the Debtors, the "**Proponents**").  This Court, having considered: (i) the Plan; (ii) the Disclosure Statement; (iii) the Confirmation Memorandum, including the (x) *Declaration of Thomas Fairfield in Support of Confirmation of First Amended Joint Plan of Liquidation Under the Bankruptcy Code* attached to the Confirmation Memorandum (the "**Fairfield Declaration**") and (y) *Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on Debtors' First Amended Joint Plan of Liquidation Under the Bankruptcy Code* attached to the Confirmation Memorandum (the "**Young Declaration**"); (iv) any evidence presented at the Confirmation Hearing, including the proffers, statements and representations of counsel, the modifications, amendments and additions to the Plan announced on the record by counsel for the Proponents or as set forth in the Confirmation Memorandum, which have been incorporated in writing into this Order, and

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan. Any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code (as defined below) or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Bankruptcy Rule 7052,

issued its oral ruling on the record at the Confirmation Hearing and in accordance with the

Court's ruling on the record, makes the following findings of fact and conclusions of law:

**Findings and Conclusions / Judicial Notice**

A.    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this

proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

B.    The Court takes judicial notice of the docket in these Chapter 11 Cases and any

related adversary proceedings or the claims register(s) maintained by Epiq Corporate

Restructuring, LLC, the Debtors' claims and noticing agent, including, without limitation, all

pleadings and other documents filed, all orders entered, and all evidence and arguments made,

proffered, or adduced at the hearings held before the Court during the pendency of these

Chapter 11 Cases.

**Jurisdiction and Venue**

C.    On July 22, 2020 (the "**Petition Date**"), the Debtors commenced these cases by

filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-

1532 (the "**Bankruptcy Code**").

D.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(L). This Court has exclusive jurisdiction to determine whether the Plan complies with

the applicable provisions of the Bankruptcy Code and should be confirmed, and this Court's

exercise of such jurisdiction to enter a final order with respect thereto is proper in all respects.

3

E.      On July 30, 2020, the United States Trustee appointed the Committee (Docket No. 128).

**Disclosure Statement / Notice**

F.      The Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code.

G.      The Disclosure Statement, the Plan, the ballots, the *Order (A) Scheduling Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan of Liquidation, (B) Establishing Procedures for Solicitation and Tabulation of Votes on Plan and (C) Approving Related Dates, Forms and Procedures* (Docket No. 533) (the "**Combined Hearing Order**"), and related materials were transmitted and served as required by the Court and in compliance with the Combined Hearing Order, the Bankruptcy Code, the Bankruptcy Rules, and any applicable local bankruptcy rules, as evidenced by the *Affidavit of Service of Solicitation Materials* (Docket No. 555) (the "**Solicitation Affidavit**"). Such transmittal and service constitutes proper and sufficient notice reasonably calculated, under the circumstances, to apprise creditors and interested parties of the pendency of the Plan, the Confirmation Hearing, and afford them an opportunity to present their objections and no other or further notice is or shall be required.

**Voting**

H.      Votes to accept or reject the Plan have been solicited with proper and sufficient notice and tabulated fairly, in good faith, and in a manner consistent with the Combined Hearing Order, the Bankruptcy Code, the Bankruptcy Rules and, as applicable, the local rules.

**Burden of Proof**

I.      The Proponents have the burden of proving the elements of section 1129(a) (and if applicable, section 1129(b)) of the Bankruptcy Code by a preponderance of the evidence and they have met that burden as further found and determined herein.

**Compliance with Sections 1123 and 1129 of the Bankruptcy Code**

J.      Section 1129(a)(1) – Plan's Compliance with the Bankruptcy Code. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

K.      Sections 1122(a) and 1123(a)(1)-(4). The Plan satisfies sections 1122(a) and 1123(a)(1) of the Bankruptcy Code and designates separate Classes of Claims, and each Class contains Claims that are substantially similar to the other Claims within that Class. The Plan satisfies sections 1123(a)(2) through (4) of the Bankruptcy Code by specifying the treatment of each Class that is impaired, and by providing the same treatment for each Claim within a particular Class.

L.      Section 1123(a)(5). The Plan and various documents set forth therein or incorporated by reference provide adequate means for the Plan's implementation, including, *inter alia*: (i) the creation of the Liquidating Trust and the transfer of the Liquidating Trust Assets to the Liquidating Trust. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

M.      Sections 1123(a)(6) – (a)(8). Section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan since it does not provide for the issuance of any interests in any Debtors. Section 1123(a)(7) does not apply as the Plan provides for the dissolution of the Debtors and it

does not provide for the selection of any officers and directors of the Debtors. To the extent the provision applies, the Plan provides for the appointment of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services as the Liquidating Trustee for the Debtors for the purposes of liquidating the Debtors' assets and winding up the Debtors' affairs. Section 1123(a)(8) does not apply as the Debtors are not individuals.

N.      Section 1123(b). The provisions of the Plan comply with, and are not inconsistent with, the applicable provisions of the Bankruptcy Code, including section 1123(b). Among other items, the Plan identifies and impairs or, as applicable leaves unimpaired, each Class of Claims pursuant to section 1123(b)(1); it provides pursuant to section 1123(b)(2) for the assumption and assignment, or rejection, of the Debtors' previously unrejected executory contracts and unexpired leases; it provides pursuant to section 1123(b)(3) for the Liquidating Trustee to retain, enforce or settle any claim or interest that belongs to the Debtors or the Estates, as the case may be. Pursuant to section 1123(b)(6) of the Bankruptcy Code, the Plan contains other customary provisions that are consistent with the Bankruptcy Code, including: (i) provisions governing Distributions on account of Allowed Claims; (ii) procedures for resolving Disputed Claims; (iii) provisions regarding the modification of the Plan; (iv) provisions for a Debtor Release and Third-Party release against certain Released Parties; and (v) provisions for the retention of jurisdiction by this Court with respect to certain matters listed in Article X of the Plan. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

O.      Bankruptcy Rule 3016(a). The Plan is dated and identifies the entities submitting the Plan as the proponents, thereby satisfying Bankruptcy Rule 3016(a).

P.      <u>Section 1129(a)(2) – Plan Proponents' Compliance with the Bankruptcy Code</u>.

The Proponents have complied with the applicable provisions of the Bankruptcy Code. The

Proponents are proper proponents of the Plan and have solicited acceptances of the Plan in

accordance with the requirements of section 1125 of the Bankruptcy Code, the Bankruptcy

Rules, the Combined Hearing Order, and, as applicable, the local rules. Pursuant to the

Combined Hearing Order, on or about December 1, 2020, as evidenced by the Solicitation

Affidavit, the Proponents mailed, by first class mail, postage prepaid, the Solicitation Package

containing copies of: (i) a cover letter describing the contents of the Solicitation Package; (ii) a

USB flash drive containing the Plan and the Disclosure Statement; (iii) Ballots and instructions

for completing the same; (iv) the Combined Hearing Order; and (v) a prepaid Ballot return

envelope.  Creditors not entitled to vote on the Plan were mailed copies of the Combined

Hearing Order. The Disclosure Statement and the procedures by which the ballots for

acceptance or rejection of the Plan were solicited and tabulated were adequate, fair, properly

conducted and in accordance with Bankruptcy Rules 3017 and 3018, section 1126(b) of the

Bankruptcy Code, the Combined Hearing Order, and, as applicable, the local rules.

Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code.

Q.      <u>Section 1129(a)(3) – Plan Proposed in Good Faith</u>. The Proponents have proposed

the Plan in good faith and not by any means forbidden by law. The Plan is the result of

extensive good faith, arm's-length negotiations between the Debtors and the Committee and, as

evidenced by strong creditor support for the Plan, achieves the goals broadly embodied in the

Bankruptcy Code. Therefore, the Plan complies with section 1129(a)(3) of the Bankruptcy

Code.

R.      Section 1129(a)(4) – Payment for Services. Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

S.      Section 1129(a)(5) – Identity of Management. In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Proponents identified the person appointed as the Liquidating Trustee and serving in that capacity as the appointed representative of the Debtors and/or the Estates pursuant to the *Notice of Filing of Selection of Liquidating Trustee and Liquidating Trust Board Representatives and Filing of Form Liquidating Trust Agreement* (Docket No. 563). Furthermore, Article V of the Plan describes in detail the Liquidating Trustee and the duties of the Liquidating Trustee. The appointment of the Liquidating Trustee is consistent with the interests of creditors and public policy. The members of the Liquidating Trust Board assert that they have no conflict of interest.  Therefore, the Plan complies with section 1129(a)(5) of the Bankruptcy Code.

T.      Section 1129(a)(6) – No Rate Changes. The Plan does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

U.      Section 1129(a)(7) – Best Interests of Creditors. With respect to each impaired Class of Claims, each Holder in such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on

the Effective Date under chapter 7 of the Bankruptcy Code. Therefore, the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

V.    <u>Section 1129(a)(8) – Acceptance by Certain Classes</u>. The following Classes are impaired and, as indicated in the Young Declaration, such Classes have accepted the Plan because pursuant to section 1126(c) of the Bankruptcy Code more than one-half (1/2) of the number and at least two-thirds (2/3) of the dollar amount actually voting have accepted the Plan: Class 1, Class 3, Class 4 and Class 5. Class 2 (Secured 2 Claims) is not impaired and was deemed to accept the Plan.  Class 6 (Equity Interests) is impaired and does not receive or retain any property under the Plan on account of such Interests. Accordingly, Class 6 is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Nevertheless, the Plan is confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code.

W.    <u>Section 1129(a)(9) – Treatment of Administrative Claims, Priority Claims, and Priority Tax Claims</u>. The treatment of Administrative Claims and Priority Claims pursuant to the Plan satisfies the requirements of sections 1129(A)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

X.    <u>Section 1129(a)(10) – Acceptance by One Impaired Class</u>. The Plan has been accepted by Class 1, Class 3, Class 4, and Class 5, all of which are impaired under the Plan. Because at least one impaired Class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

Y.    <u>Section 1129(a)(11) – Feasibility</u>. The Plan calls for the liquidation of the Debtors. Therefore, the Plan complies with section 1129(a)(11) of the Bankruptcy Code.

Z.    <u>Section 1129(a)(12) – Payment of Fees</u>. Pursuant to Article III of the Plan, all fees payable under 28 U.S.C. § 1930 will be paid by the Debtors, or as applicable by the Liquidating Trustee, until such time as the Debtors' Chapter 11 Cases are closed or dismissed.    All outstanding Trustee fees as of the Effective Date of the Plan shall be paid on or before the Effective Date.    Therefore, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

AA.    <u>Section 1129(a)(13) – Retiree Benefits</u>. The Debtors do not sponsor or provide any retiree benefit plans within the meaning of section 1114 of the Bankruptcy Code and the Debtors have terminated their 401(k) plans. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

BB.    <u>Section 1129(a)(14) – Domestic Support Obligations</u>. The Debtors are not required to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

CC.    <u>Section 1129(a)(15) – Debtors are Not Individuals</u>. The Debtors are not individuals. Accordingly, section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

DD.    <u>Section 1129(a)(16) – Transfers</u>. Each of the Debtors is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is not applicable to the Plan.

EE.    <u>Section 1129(b) – Cramdown</u>. This Court, having considered the Confirmation Memorandum filed by the Proponents, confirms the Plan under section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by Class 6 (Equity Interests) because the Plan does not unfairly discriminate against, and is fair and equitable with respect to

the Holders of Claims in Class 6 since, among other possible reasons, no holder of any interest

that is junior to the Claims in Class 5 will receive or retain any property under the Plan.

FF.     <u>Section 1129(c) – Only One Plan</u>. The Plan is the only plan filed in these chapter

11 cases, and therefore, section 1129(c) of the Bankruptcy Code does not apply.

GG.     <u>Section 1129(d) – Principal Purpose of Plan</u>. The principal purpose of the Plan is

not the avoidance of taxes or the avoidance of application of Section 5 of the Securities Act of

1933, as amended. Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

HH.     <u>Section 1129(e) – Small Business Cases</u>. None of the chapter 11 cases are small

business cases within the meaning of the Bankruptcy Code. Accordingly, section 1129(e) of the

Bankruptcy Code is inapplicable to these chapter 11 cases.

II.     <u>Substantive Consolidation</u>. Article II of the Plan provides for the substantive

consolidation of the Debtors' estates for solely for the purposes of voting, confirmation, and

distributions.  Based on the evidence presented at or before the Confirmation Hearing including,

but not limited to the Fairfield Declaration and the arguments set forth in the Confirmation

Memorandum and those of counsel at the Confirmation Hearing, and the entire record of these

Chapter 11 Cases, the Court finds that such limited consolidation is factually warranted, fair and

equitable, and in the best interests of the Debtors' creditors and Estates.

JJ.     <u>Assumption and Rejection of Contracts</u>. Article VII of the Plan governing the

assumption and assignment or the rejection of executory contracts and unexpired leases satisfies

the requirements of sections 365(a), 365(b) and 365(f) of the Bankruptcy Code.

KK.     <u>Releases and Exculpation</u>. All releases, injunctions, exculpations, settlements and

compromises embodied in the Plan, and the distributions and rights provided thereunder, are an

integral part of the Plan. Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy

Rule 9019(a), the releases, exculpations, and injunctions set forth in the Plan are fair, equitable, reasonable and in the best interests of the Debtors, their Estate(s) and creditors, and such provisions: (i) fall within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d); (ii) are essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Bankruptcy Case, except to the extent otherwise provided in the Plan; and (iv) are consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

LL.    <u>Section 1125(e) – Good Faith Solicitation</u>. The Proponents have complied with section 1125(e) in transmitting the solicitation materials and in soliciting and tabulating the vote.

It is therefore **ORDERED AND ADJUDGED** that:

1.     The Disclosure Statement is **APPROVED** on a final basis in each and every respect pursuant to section 1125 of the Bankruptcy Code.

2.     The Plan is hereby amended as follows:

    i.  Section 9.05 of the Plan is deleted in its entirety and replaced with the following:

> After the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that a Claim may be amended by the Holder of such Claim without authority from the Bankruptcy Court solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

    ii.    The definition of "Distribution Record Date" is deleted in its entirety and replaced with the following:

> "Distribution Record Date" means (i) the Administrative Claims Bar Date as to the Holders of Allowed Administrative Claims entitled to Distributions pursuant to the Plan and (ii) any such date established by the Liquidating Trustee as to Holders of Allowed Other Secured Claims, Allowed Other Priority Claims and Allowed General Unsecured Claims.

    iii.    Section 5.03 of the Plan is deleted in its entirety and replaced with the following:

> The Liquidating Trust will be advised by the "Liquidating Trust Board," which shall initially consist of five voting members designated by the Creditors' Committee

3.    The Plan, attached hereto as **EXHIBIT A** and as amended by this Order, is **CONFIRMED** and **APPROVED** in all respects.

4.    The Court hereby **DENIES** and/or **OVERRULES**, as applicable, all objections not previously withdrawn or otherwise resolved and relating to: (a) the approval of the Disclosure Statement; and (b) the confirmation of the Plan.

5.    The Findings of Fact and Conclusions of Law set forth above shall constitute findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law it shall be so deemed, and to the extent of any conclusion of law shall be determined to be a finding of fact it shall be so deemed.

6.    Notice was adequate and sufficient under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and Orders of this Court, and the Due Process Clause of the United States Constitution.

7.      <u>Effective Date</u>. The Effective Date of the Plan shall be on the Business Day on which all conditions to the consummation of the Plan, as set forth in Article XII, have been satisfied or waived.

8.      <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications and dollar amounts set forth on the ballots tendered to or returned by the Debtors' creditors and equity interest holders in connection with voting on the Plan: (a) were set forth on the ballots for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors or the Liquidating Trustee and shall not limit, prejudice or impair any party in interest from filing any objections to Claims.

9.      <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtors, any entity acquiring or receiving property or a distribution under the Plan, and any creditor of or holder of an Equity Interest in the Debtors, including all governmental entities, whether or not the Claim of such creditor or the Equity Interest of such holder is disallowed, extinguished or impaired under the Plan; or whether or not such creditor or Equity Interest holder has accepted the Plan.  However, nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins any liability to a Governmental Unit on the part of any non-debtor. Nothing in this Confirmation Order or the Plan shall affect any valid right of setoff or recoupment of any Governmental Unit.

10.     <u>Substantive Consolidation</u>. The Debtors' Estate(s) are hereby substantively consolidated solely for purposes of voting and confirming this Plan and making distributions to holders of Claims under this Plan and for no other purpose.

11.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to sections 105, 363, 365 and 1123(b)(2) of the Bankruptcy Code, and pursuant to Article VII of the Plan, any and all Executory Contracts and Unexpired Leases not assumed by the Debtors (other than executory contracts of unexpired leases related to the Debtors' insurance policies) on or before the Effective Date or by order of the Court are **REJECTED**.

12.     <u>Bar Date for Rejection Claims</u>. Pursuant to section 7.02 of the Plan, if an affected counterparty or any other party in interest (the "**<u>Rejection Claimant</u>**") asserts a claim or claims against the Debtors arising from the rejection of an executory contract or unexpired lease, such Rejection Claimant shall submit a proof of claim on or before 30 days after the Effective Date. If the Rejection Claimant does not timely file such proof of claim, the claimant shall be forever barred from asserting a claim against the Debtors for such rejection damages.

13.     <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, to the extent applicable, any transfers from the Debtors to any other Entity or Person pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.

14.     <u>Corporate Action / General Authorizations</u>. All matters provided for under the Plan involving any corporate action to be taken by, or required of, the Debtors, shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders, directors,

members, or partners of any such entities. Notwithstanding the foregoing, the Liquidating Trustee shall be authorized to the extent necessary or advisable to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate on behalf of the Debtors to effectuate and further evidence the terms and conditions of the Plan.

15.     Further Actions. The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Debtors, the Liquidating Trustee, or the Committee to take any actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order and the transactions contemplated thereby, all without further application to, or order of, this Court unless such documents specifically require the approval and order of this Court with respect to the specific action or transaction to be taken or effectuated.

16.     Plan Documents. The documents substantially in the form attached to the Plan, or substantially in the form attached to the Disclosure Statement and incorporated by reference in the Plan, including but not limited to the Liquidating Trust Agreement, together with any amendments, modifications and supplements thereto, are authorized and approved, except as otherwise provided in this Order.

17.     Preservation of Causes of Action / Defenses. In accordance with section 1123(b)(3) of the Bankruptcy Code, and unless a Claim, objection, defense or Cause of Action against an Entity or Person is expressly waived, relinquished, released, compromised or settled in the Plan, the DIP Order, the Sale Order, the Settlement Agreement, the Lender Settlement Order, or any Final Order (including this Order), nothing in this Order or the Plan shall be deemed to waive, abandon, relinquish, impair, or otherwise prejudice any claims, objections, defenses, or

16

Causes of Action, including any rights of setoff or recoupment, that the Debtors or the Estate may have, and the Debtors and the Estate will retain and may (but shall not be required to) enforce all such claims, objections, defenses or Causes of Action.  The Debtors and the Estate shall further retain all claims, objections, defenses and rights regarding the claim allowance and reconciliation process in the Debtors' Chapter 11 Cases and in the provisions of the Plan governing Disputed Claims. The failure of the Debtors to specifically list any Claim, Cause of Action, suit, or proceeding does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Estates of such Claim, cause of action, suit, or proceeding.  Following the Effective Date, the Liquidating Trustee shall retain all rights under Sections 541, 542, and 543 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules.

18.    <u>Dissolution of Directors and Officers</u>. Upon the Effective Date, (i) all officers, directors and employees of the Debtors are deemed to have resigned from the Debtors and are discharged from their duties and positions, and (ii) the existing board of directors and/or board(s) of managers of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers, managers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers and directors of such Debtor.

19.    <u>Corporate Status and Dissolution</u>. The Liquidating Trustee may in its discretion maintain the corporate status of the Debtors if deemed reasonably necessary or desirable to aid in the winding down the Debtors' affairs and liquidating the assets of the Debtors or the Estates, as the case may be. Notwithstanding the foregoing, the Liquidating Trustee shall have the authority to take all actions that she deems necessary or appropriate to formally dissolve the Debtors in,

withdraw the Debtors from, or deregister the Debtors in any applicable state or subdivision thereof.

20.    <u>Injunction</u>. The injunction provisions contained in the Plan are approved to the fullest extent allowed under section 1125(e) of the Bankruptcy Code.

21.    <u>Tax Returns</u>. The Liquidating Trustee shall timely file all tax returns as required by applicable state law and by 28 U.S.C. §§ 959(b) and 960. Any setoff rights available under section 553 of the Bankruptcy Code to any governmental units (as defined under section 101(27) of the Bankruptcy Code) is hereby expressly reserved for the benefit of such governmental units.

22.    <u>Fees Under 28 U.S.C. § 1930</u>. All fees payable under 28 U.S.C. § 1930 will be paid by the Debtors, or as applicable by the Liquidating Trustee, until such time as the Debtors' Chapter 11 Cases are closed or dismissed. All parties reserve all rights, remedies, claims, and defenses regarding post-confirmation reporting and the calculation and payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6), and nothing in the Plan, this Order, or any prior order of this Court shall be used in any way to impair, nor be deemed a waiver or determination of, any such rights, remedies, claims, and defenses.

23.    <u>Exculpation and Limitation of Liability</u>. Effective upon the Effective Date, the exculpation and limitation of liability provisions as specifically provided in Section 11.03 of the Plan are hereby approved in their entirety and authorized as fair, equitable, reasonable and in the best interests of the Debtors, their Estate(s), and their Creditors.

24.    <u>Third Party Release</u>. Effective upon the Effective Date, the release of the Released Parties by the Releasing Parties as specifically provided in Section 11.04 of the Plan is hereby approved in its entirety and authorized as fair, equitable, reasonable and in the best interests of the Debtors, their Estate(s), and their Creditors.

25. <u>Debtor Release</u>. Effective upon the Effective Date, the release of the Released Parties by the Debtors and the Estates as specifically provided in Section 11.05 of the Plan and as approved by the DIP Order, the Sale Order, the Settlement Agreement and the Lender Settlement Order is hereby incorporated into this Plan and approved in its entirety and authorized as fair, equitable, reasonable and in the best interest of the Debtors, their Estate(s), and their Creditors.

26. <u>Bar Date for Administrative Claims</u>. All requests for payment of an Administrative Claim must be filed with the Bankruptcy Court pursuant to customary applications by the date that is 30 calendar days after the Effective Date. If no objections are timely filed to any application for an Administrative Claim, the Bankruptcy Court may approve such applications without a hearing.

27. <u>Notice of Order and Effective Date</u>. Pursuant to Bankruptcy Rule 3020(c), the Proponents shall serve notice of the entry of this Order, the occurrence of the Effective Date and any bar dates established by the Plan pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and parties in interest within five (5) business days of the entry of this Confirmation Order, and shall file proof of service. This Court's *Order Implementing Certain Notice and Case Management Procedures* (Docket No. 89) shall continue to apply to these Chapter 11 Cases until further order of this Court.

28. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain jurisdiction to the fullest extent permitted by law to interpret and enforce the provisions of the Plan, this Order, and all other matters as set forth in the Plan.

29. <u>No Discharge</u>. Because substantially all of the Debtors' assets are being liquidated pursuant to the Plan, there will be no discharge entered as provided in section 1141(d)(3) of the Bankruptcy Code.

30.     <u>No Stay of Order</u>. This Order is a final order and shall be effective and enforceable immediately upon its entry and shall not be stayed pursuant to Bankruptcy Rule 3020(e) or otherwise. Likewise, the provisions of this Order approving the Disclosure Statement, and the Plan, shall be effective and enforceable immediately upon the entry of this Confirmation Order and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062 or otherwise.

31.     <u>Failure to Reference</u>. The failure to reference a particular provision of the Plan in this Order shall not affect the validity of enforceability of such provision. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order.

32.     <u>Order of Controlling Documents</u>. To the extent there is any conflict between the terms of this Order with the Plan, the Liquidating Trust Agreement, or the Disclosure Statement, the terms of this Order shall control.

33.     <u>Post Confirmation Report.</u>  The Liquidating Trustee shall file an initial post-confirmation report on or about July 15, 2021 and every six months thereafter pursuant to Local Rule 3020-2.

34.     <u>Bond.</u> Pursuant to Section 5.08 of the Plan, the Liquidating Trustee shall be obligated to obtain a bond in an amount to be determined by the Court. The Court hereby establishes the Liquidating Trustee's bond in the amount of $2,850,000.00.

**SO ORDERED.**

Copies to:  Default List

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IN RE: | Chapter 11 |
| HOPEDALE MINING LLC, *et al.*,[1] | Case No. 20-12043 (GRH) |
| Debtors. | (Jointly Administered) |

---

**FIRST AMENDED JOINT PLAN OF ORDERLY LIQUIDATION OF HOPEDALE MINING LLC**
**AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Douglas L. Lutz
A.J. Webb
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 651-6800
Facsimile:  (513) 651-6981
Email:     dlutz@fbtlaw.com
           awebb@fbtlaw.com

**Counsel to the Debtors and Debtors-in-Possession**

| | |
|---|---|
| Geoffrey S. Goodman | T. Kent Barber |
| (admitted *pro hac vice*) | (admitted *pro hac vice*) |
| Matthew D. Lee | BARBER LAW PLLC |
| (admitted *pro hac vice*) | 2200 Burrus Drive |
| FOLEY & LARDNER LLP | Lexington, KY 40513 |
| 321 North Clark Street | Telephone: (859) 296-4372 |
| Suite 2800 | kbarber@barberlawky.com |
| Chicago, Illinois 60654 | |
| Telephone:  (312) 832-4500 | |
| Facsimile:  (312) 832-4700 | |
| ggoodman@foley.com | |
| mdlee@foley.com | |

**Counsel for the Official Committee of Unsecured Creditors of Hopedale Mining LLC, *et al.***

---

[1]     The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Rhino GP LLC (8619), Rhino Resource Partners LP (7517), Rhino Energy LLC (6320), Rhino Trucking LLC (8773), Rhino Exploration LLC (8863), Triad Roof Support Systems LLC (1183), Springdale Land LLC (9816), McClane Canyon Mining LLC (3783), Rhino Northern Holdings LLC (1858), CAM-Ohio Real Estate LLC (1859), CAM-Colorado LLC (4269), Taylorville Mining LLC (5106), CAM Coal Trading LLC (4143), Castle Valley Mining LLC (9495), Jewell Valley Mining LLC (0270), Rhino Services LLC (3356), Rhino Oilfield Services LLC (8938), Rhino Technologies LLC (0994), CAM Mining LLC (2498), Rhino Coalfield Services LLC (3924), Hopedale Mining LLC (9060), CAM-Kentucky Real Estate LLC (9089), CAM-BB LLC (9097), Leesville Land LLC (7794), CAM Aircraft LLC (5467), Pennyrile Energy LLC (6095), Rhino Eastern LLC (1457), Rockhouse Land LLC (7702).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION .................................2

ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS..........................12

    Section 2.01     Classification...............................................................................12
    Section 2.02     Substantive Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution............................................................12

ARTICLE III: TREATMENT OF CLAIMS AND EQUITY INTERESTS ...............................13

    Section 3.01     General ......................................................................................13
    Section 3.02     Unclassified Claims .................................................................13
    Section 3.03     Impaired/Voting Classes of Claims against and Equity Interests in the Debtors ..............................................................................14
    Section 3.04     Impaired/Non-Voting Classes of Claims against and Equity Interests in the Debtors ...............................................................16
    Section 3.05     Lender Settlement Contribution Amount....................................16

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN......................................17

    Section 4.01     Impaired Classes of Claims and Equity Interests Entitled to Vote............17
    Section 4.02     Acceptance by an Impaired Class ..............................................17
    Section 4.03     Presumed Acceptance by Unimpaired Class ...............................17
    Section 4.04     Presumed Rejection by Impaired Classes ...................................17
    Section 4.05     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........17
    Section 4.06     Elimination of Vacant Classes ..................................................17

ARTICLE V: THE LIQUIDATING TRUST ...................................................................18

    Section 5.01     Sources of Consideration for Plan Distributions .......................18
    Section 5.02     The Liquidating Trust ...............................................................18
    Section 5.03     Liquidating Trust Board.............................................................18
    Section 5.04     Appointment and Termination of the Liquidating Trustee .......18
    Section 5.05     Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest .............................................19
    Section 5.06     Responsibilities of Liquidating Trustee.....................................20
    Section 5.07     Costs and Expenses of the Liquidating Trust ...........................21
    Section 5.08     Bonding of Liquidating Trustee.................................................21
    Section 5.09     Fiduciary Duties of the Liquidating Trustee..............................21
    Section 5.10     Liability, Indemnification of the Liquidating Trust Protected Parties.......................................................................................21
    Section 5.11     Full and Final Satisfaction Against Liquidating Trust...............22

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN ...................................22

    Section 6.01     Corporate Action.......................................................................22
    Section 6.02     Dissolution and Boards of the Debtors and Officers .................22
    Section 6.03     Effectuating Documents; Further Transactions .........................23

i

Section 6.04        Preservation of Rights of Action..................................................23
Section 6.05        Closing of Debtors' Cases .........................................................24
Section 6.06        Operations of the Debtors Between the Confirmation Date and the
                    Effective Date ...........................................................................24
Section 6.07        Dissolution of the Creditors' Committee....................................24
Section 6.08        Destruction of Books and Records .............................................24

ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES..........................................................................................25

Section 7.01        Executory Contracts and Unexpired Leases ...............................25
Section 7.02        Claims Based on the Rejection of Executory Contracts and
                    Unexpired Leases ......................................................................25

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS ...........................25

Section 8.01        Calculation of Amounts to be Distributed .................................25
Section 8.02        Delivery of Distributions and Undeliverable or Unclaimed
                    Distributions.............................................................................26
Section 8.03        Compliance with Tax Requirements/Allocations .......................27
Section 8.04        Claims Paid or Payable to Third Parties ....................................28

ARTICLE IX: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
        AND DISPUTED CLAIMS AND EQUITY INTERESTS...................29

Section 9.01        Resolution of Disputed Claims .................................................29
Section 9.02        Distribution Reserve Account....................................................30
Section 9.03        Distributions After Allowance ..................................................31
Section 9.04        Disallowance of Claims ............................................................31
Section 9.05        Amendments .............................................................................31
Section 9.06        No Interest ................................................................................31

ARTICLE X: RETENTION OF JURISDICTION .................................................32

Section 10.01       Retention of Jurisdiction ..........................................................32
Section 10.02       Failure of the Bankruptcy Court to Exercise Jurisdiction..........33

ARTICLE XI: SETTLEMENT, RELEASES, INJUNCTIONS AND EXCULPATIONS...........34

Section 11.01       Debtors Will Not Receive Discharge.........................................34
Section 11.02       No Releases by Debtors .............................................................34
Section 11.03       Exculpation and Limitation of Liability ....................................34
Section 11.04       Lender Release by Holders of Claims Voting in Favor of Plan ...............35
Section 11.05       Lender Release by Debtors and Estates......................................36
Section 11.06       Injunction .................................................................................36
Section 11.07       Setoffs ......................................................................................37
Section 11.08       Term of Injunctions or Stays.....................................................38

ARTICLE XII: CONDITIONS PRECEDENT TO CONFIRMATION  AND
        CONSUMMATION OF THE PLAN .................................................38

Section 12.01       Conditions to Effective Date.....................................................38
Section 12.02       Notice of Occurrence of the Effective Date...............................39

Section 12.03     Consequences of Non-Occurrence of Effective Date ...............................39
Section 12.04     Substantial Consummation ........................................................................39
ARTICLE XIII: MISCELLANEOUS PROVISIONS ...................................................................39
Section 13.01     Liquidating Trustee Professionals...............................................................39
Section 13.02     Modifications and Amendments..................................................................39
Section 13.03     Continuing Exclusivity and Solicitation Period.........................................40
Section 13.04     Severability of Plan Provisions...................................................................40
Section 13.05     Successors and Assigns and Binding Effect ...............................................40
Section 13.06     Revocation, Withdrawal or Non-Consummation .......................................40
Section 13.07     Notices ........................................................................................................41
Section 13.08     Computation of Time...................................................................................41
Section 13.09     Governing Law ............................................................................................41
Section 13.10     Exhibits .......................................................................................................42
Section 13.11     Conflicts.......................................................................................................42
Section 13.12     Exemption ....................................................................................................42
Section 13.13     Substitution of the Liquidating Trust for the Debtors................................42

# INTRODUCTION

Hopedale Mining LLC ("Hopedale") and each of its affiliated debtors and debtors-in-possession, Rhino GP LLC, Rhino Resource Partners LP, Rhino Energy LLC, Rhino Trucking LLC, Rhino Exploration LLC, Triad Roof Support Systems LLC, Springdale Land LLC, McClane Canyon Mining LLC, Rhino Northern Holdings LLC, CAM-Ohio Real Estate LLC, CAM-Colorado LLC, Taylorville Mining LLC, CAM Coal Trading LLC, Castle Valley Mining LLC, Jewell Valley Mining LLC, Rhino Services LLC, Rhino Oilfield Services LLC, Rhino Technologies LLC, CAM Mining LLC, Rhino Coalfield Services LLC, CAM-Kentucky Real Estate LLC, CAM-BB LLC, Leesville Land LLC, CAM Aircraft LLC, Pennyrile Energy LLC, Rhino Eastern LLC, Rockhouse Land LLC (collectively, the "Debtors"), along with the Official Committee of Unsecured Creditors of Hopedale Mining LLC. *et al.* (the "Creditors Committee" and, collectively with the Debtors, the "Plan Proponents") hereby propose the following chapter 11 plan of liquidation. The Plan Proponents are the proponent of the Plan within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code").  This Plan contemplates the distribution of the proceeds of the liquidation of the Debtors' Assets and the resolution of the outstanding Claims against and Equity Interests in the Debtors. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, business and operations, (ii) a summary of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior as provided herein.

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtors sold substantially all of their operating Assets in eight separate transactions. [*See* Docket Nos. 340, 410, 465].  The Plan provides for the creation of a Liquidating Trust that will administer and liquidate all remaining Assets of the Debtors, including certain proceeds from the sale of the Debtors' Assets and Causes of Action, not sold, transferred or otherwise waived or released on or before the Effective Date of the Plan. The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Holders of Allowed Claims and the funding of the Liquidating Trust.  The Plan further provides for the transfer of any remaining Assets to the Liquidating Trust.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith have been conditionally approved for use in soliciting acceptances and rejections of the Plan.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND**

**THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN AS PROVIDED HEREIN.**

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. In addition to the foregoing, any defined terms used in the Exhibits shall have the meaning ascribed to them in either the applicable Exhibit or in Article I of this Plan.

"**Administrative Claim**" means a Claim for costs and expenses of administration of these Chapter 11 Cases allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred between the Petition Date and Confirmation Date of preserving the Debtors' estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims in respect of taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code); and for which an application was previously filed with the Bankruptcy Court prior to the Administrative Claims Bar Date; (b) Professional Fee Claims, and (c) all fees and charges assessed against the Debtors' estates under section 1930, chapter 123 of title 28 of the United States Code.

"**Administrative Claims Bar Date**" means the date that is thirty (30) days after the Effective Date, which is the date by which Holders of Administrative Claims must file with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment of Administrative Claims in writing together with supporting documents substantially complying with the Bankruptcy Code and the Bankruptcy Rules.

"**Affiliate**" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court, (ii) was deemed Filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof of Claim has not been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the

2

extent so allowed), and, in the case of (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 503(h) of the Bankruptcy Code; or (f) which is a Professional Fee Claim for which a fee award amount has been approved by order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

"**APA**" has the meaning ascribed in the Settlement Agreement.

"**Auction**" means the auction of certain of the Debtors' assets conducted on August 31, 2020.

"**Assigned Contracts**" has the meaning ascribed in the Sale Order.

"**Assets**" means any and all assets of the Debtors, including, but not limited to: (a) the Cash held by the Estates on the Effective Date; (b) all Causes of Action; (c) all Privileged Documents; (d) all other assets of the Debtors or of the Estates existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including but not limited to all books, records and files of the Debtors and of the Estates, in all forms, including electronic and hard copy; provided; however, that assets shall not include any permit issued by any governmental agency relating to the Debtors' mining operations.

"**Avoidance Actions**" means any and all Causes of Action and the proceeds thereof which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; provided, however, that Avoidance Actions shall not include any claims or causes of action that are released under the Settlement Agreement, Lender Settlement Order, DIP Order, or Sale Order.

"**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to these Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Ohio.

"**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Bankruptcy Rules, Forms and Procedures the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

"**Bar Date**" means the following dates, including those established by the Bar Date Order for which the Holders of Claims were to file with the Bankruptcy Court and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules: (i) December 17, 2020 for Holders of General Unsecured Claims; (ii) January 18, 2021 for any Claim held by a Governmental Unit; and (iii) the Administrative Claims Bar Date.

"**Bar Date Order**" means the Order Establishing and Providing Notice of the Last Date to File Proofs of Claim [Docket No. 481].

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Cincinnati, Ohio.

"**Cash or $**" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

"**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of these Chapter 11 Cases through the Effective Date including, without limitation, Avoidance Actions; provided, however, that Causes of Action shall not include any claims or causes of action that are released under the Settlement Agreement, Lender Settlement Order, DIP Order, or Sale Order.

"**Challenge**" has the meaning ascribed in the DIP Order.

"**Chapter 11 Cases**" means the chapter 11 cases commenced by the Debtors and jointly administered under case number 20-12043 in the Bankruptcy Court.

4

"**Claim**" or "**Claims**" means a claim or claims against any of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Bar Date**" means the first Business Day that is 180 days after the Effective Date or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court upon a motion Filed by the Liquidating Trustee served only on the Bankruptcy Rule 2002 service list (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

"**Claims Register**" means the official register of Claims maintained by the Bankruptcy Court or Epiq.

"**Class**" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as described in Article III of the Plan.

"**Committee Initial Challenges**" has the meaning ascribed in the Settlement Agreement.

"**Confirmation**" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases, subject to all conditions specified having been (a) satisfied, or (b) waived.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"**Creditor**" means any Holder of a Claim against any of the Debtors or their Estates.

"**Creditors' Committee**" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code appointed by the Office of the United States Trustee in these cases on July 30, 2020 [Docket No 128], as such committee may be reconstituted from time to time.

"**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"**Debtors**" has the meaning ascribed to it in the Introduction to this Plan.

"**DIP Documents**" has the meaning ascribed in the DIP Order.

"**DIP Facility**" has the meaning ascribed in the DIP Order.

"**DIP Lenders**" has the meaning ascribed in the DIP Order.

"**DIP Lender Claims**" shall mean the Unsecured Claims of the DIP Lenders against the Debtors.

"**DIP Order**" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 238].

"**DIP Secured Parties**" has the meaning ascribed in the DIP Order.

"**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtors which:  (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed or Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest.  In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disclosure Statement**" means the disclosure statement for the Plan, as amended, supplemented or modified from time to time, describing the Plan, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

"**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtors or any other party in interest, has Filed an objection, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtors' Schedules as disputed (unless and to the extent such Claim has been deemed Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law); or (c) a tort claim.

"**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtors or Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors or Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court.

"**Distribution**" means any Distribution pursuant to the Plan to the Holders of Allowed Claims or Equity Interests.

"**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

"**Distribution Record Date**" means (i) the Administrative Claims Bar Date as to the Holders of Allowed Administrative Claims entitled to Distributions pursuant to the Plan and (ii) any such date established by the Liquidating Trustee as to Holders of Allowed Other Secured Claims, Allowed Other Priority Claims and Allowed General Unsecured Claims.

"**Distribution Reserve Account**" means an account established by the Liquidating Trustee on or prior to the initial Distribution Date into which the Liquidating Trustee shall deposit that portion of Liquidating Trust Assets that would otherwise be distributable in respect of such Disputed Claims, if such Disputed Claims had then constituted Allowed Claims entitled to receive Liquidating Trust Assets.

"**Effective Date**" means the first Business Day following the date on which all conditions to confirmation set forth in Section 12.01 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 12.01 of the Plan, any conditions to the occurrence of confirmation set forth in the Plan has been satisfied or waived.

"**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in any of the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in any of the Debtors, membership interests, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating any of the Debtors to issue,

transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

"**Estate(s)**" means the estates of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases on the Petition Date.

"**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

"**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted.

"**General Unsecured Claim**" means an unsecured Claim against a Debtor, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease, but excluding any Administrative Claims, Priority Tax Claims, and Other Priority Claims; provided, however, that any deficiency claim asserted by a holder of a Secured Claim shall be deemed a General Unsecured Claim.

"**Governmental Unit**" means all governmental units, which shall include all entities defined in section 101 (27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

"**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Class**" means a Class or Claims or Equity Interests that are Impaired.

"**Initial Distribution Date**" means the date on which the Debtors or the Liquidating Trustee, as applicable, make initial distributions to Holders of Allowed Claims pursuant to the Plan.

"**Lender Settlement Contribution Amount**" shall mean up to $500,000 in Cash, payable by the DIP Lenders and the Prepetition Lenders (or their designees) to the Estates under the Lender Settlement Order.

8

"**Lender Settlement Order**" means the Order of the Bankruptcy Court dated November 2, 2020 [Docket No. 504], approving the terms of the Settlement Agreement.

"**Lender Settlement Participation**" shall mean 50% of all Distributions to Holders of Allowed General Unsecured Claims under this Plan, which amounts shall be paid from the Liquidating Trust Assets and capped at the Lender Settlement Contribution Amount.

"**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise:  (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of holders of General Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

 "**Liquidating Trust**" means the trust to be established on the Effective Date in accordance with this Plan.

"**Liquidating Trust Agreement**" means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan, substantially in the form to be filed with the Court by December 15, 2020.

"**Liquidating Trust Assets**" means: (a) the Cash held by the Estates after taking into account Distributions made on the Effective Date; (b) all Causes of Action; (c) all Privileged Documents and communications of the Debtors; (d) all other assets of the Debtors or of the Estates existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including but not limited to all books, records and files of the Debtors and of the Estates, in all forms, including electronic and hard copy.

"**Liquidating Trust Board**" shall have the meaning ascribed to it in Section 5.03 of the Plan, and as more fully set forth in the Liquidating Trust Agreement.

"**Liquidating Trust Protected Parties**" means the Liquidating Trust, the Liquidating Trustee, the members of the Liquidating Trust Board and the members, designees, agents, professionals, employees, managers, partners, actuaries, financial advisors, and attorneys and each of the foregoing.

"**Liquidating Trustee**" means the person or entity who has been selected by the Plan Proponents to act as liquidating trustee as provided in the Plan solely in that capacity, with such selection to be made by December 15, 2020, and a notice to be filed with the Court reflecting the same.

"**Order(s)**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any case or the docket of any other court of competent jurisdiction.

"**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"**Person**" shall have the meaning provided in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means the date on which each respective Debtor Filed its petition for relief commencing a Chapter 11 Case.

"**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

"**Prepetition Credit Documents**" has the meaning ascribed in the DIP Order.

"**Prepetition Debt**" has the meaning ascribed in the DIP Order.

"**Prepetition Lenders**" has the meaning ascribed in the DIP Order.

"**Prepetition Lender Claims**" shall mean the Unsecured Claims of the Prepetition Lenders against the Debtors.

"**Prepetition Secured Parties**" has the meaning ascribed in the DIP Order.

"**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Privileged Documents**" means all documents and communications maintained by the Debtors subject to attorney-client, work product, or common interest privilege claims.

"**Professional**" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

"**Professional Fee Claims**" means compensation for legal, financial, advisory, accounting and other services by Professionals and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date.

"**Proof of Claim**" means a proof of claim Filed with the Bankruptcy Court or the Claims Agent in these Chapter 11 Cases.

"**Pro Rata Share**" means with respect to any Distribution to a Class under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim or Equity Interest in such Class to the aggregate amount of all Allowed Claims or Equity Interests in such Class plus the

Disputed Claim Amount of all Disputed Claims or the amount of Equity Interests that are Disputed in the same Class; provided that, to the extent any Disputed Claims or Equity Interests are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims in such Class shall be adjusted to take into account the Disputed Claim amounts that are Disputed (or portion thereof) associated with the Disputed Claim that was not Allowed.

"**Released Parties**" shall mean (i) the DIP Secured Parties, (ii) the Prepetition Secured Parties, (iii) Pledge Servicing Partners, LLC, (iv) ARC Financial Partners, LLC, (v) Appalachian Resource Company, LLC and (vi) with respect to each of the foregoing parties in clauses (i) through (v), such party's respective current and former affiliates, and such party's and their current and former affiliates' current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

"**Releasing Party**" has the meaning ascribed to it in Section 11.04 of the Plan.

"**Sale Closing**" has the meaning ascribed in the Settlement Agreement.

"**Sale Transaction**" has the meaning ascribed in the Sale Order.

"**Sale Order**" means the September 4, 2020, *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Non-Assumed Liens, Claims, Encumbrances, and Interests; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 410].

"**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

"**Secured Claim**" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Claim. If the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, such excess shall be treated as a General Unsecured Claim.

"**Settlement Agreement**" means the *Settlement Agreement* between the Prepetition Lenders, DIP Lenders, Committee, and Debtors which was attached as Exhibit A to the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Approval of Settlement Agreement Prepetition Lenders and DIP Lenders Pursuant to Bankruptcy Rule 9019* [Docket No. 483].

"**Stalking Horse Bidder**" has the meaning ascribed in the Sale Order.

"**Unexpired Lease**" means a lease of personal or real property to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Unimpaired**" means Claims in an Unimpaired Class.

"**Unimpaired Class**" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtors (except for DIP Lender Claims, which are also Unsecured Claims) that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim.

"**U.S. Trustee**" means the Office of the United States Trustee for Region 9.

"**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to these Chapter 11 Cases.

# ARTICLE II:
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### Section 2.01   Classification

Claims against the Debtors, other than Administrative Claims and Priority Tax Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Other Priority Claims | Impaired | Yes |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | DIP Lender Claims | Impaired | Yes |
| 4 | Prepetition Lender Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### Section 2.02   Substantive Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution

The Plan provides for substantive consolidation of the Estates, for purposes of voting, confirmation, and making Distributions to the Holders of Claims under the Plan.  Voting on the Plan shall be counted on a consolidated basis.  On the Effective Date, and solely for purposes of voting, confirmation and making Distributions to the Holders of Claims under the Plan (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect

12

to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases.  On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the Debtors, all General Unsecured Claims based upon guaranties of collection, payment or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect.  Except as set forth in this Section, such substantive consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the substantive consolidation of the Estates for the purposes set forth herein, each Debtor shall pay its respective U.S. Trustee Fee Claims on all disbursements for any open Chapter 11 Cases, including any Distributions or disbursements made as a result of this Plan, until the earlier of entry of a final decree in these Chapter 11 Cases, dismissal of these Chapter 11 Cases, closure of these Chapter 11 Cases, or conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III:
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Section 3.01   General

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies within the description of that different Class.  A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### Section 3.02   Unclassified Claims

*(a)   Administrative Claims*

In full satisfaction, and settlement of and in exchange for each Allowed Administrative Claim, except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Debtors or the Liquidating Trustee, as applicable, to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of (i) the Effective Date or as soon thereafter as is practicable if due on or before that date and unpaid on the Effective Date, (ii) as soon as practicable after the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Liquidating Trustee.

Any Holder of an Administrative Claim shall File an application by the Administrative Claims Bar Date for allowance of such Administrative Claim. Any Administrative Claim that is not filed by the Administrative Claims Bar Date shall be Disallowed. In addition, any Holder of an Administrative Claim that does not file an application for allowance of such Administrative Claim by the Administrative Claims Bar Date shall be forever barred from pursuing that Administrative Claim against the Debtors, the Estates, the Liquidating Trust or the Liquidating Trust Assets.

*(b)    Professional Fee Claims*

Any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than thirty (30) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date, and (ii) shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Allowed Professional Fee Claims, Cash in the amount of the Allowed Professional Fee Claims.

*(c)    Priority Tax Claims*

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive payment in full, in Cash, through quarterly installment payments made by the Liquidating Trustee beginning on June 30, 2021 and ending on the earlier of (i) payment in full of the Allowed Priority Tax Claim, (b) five years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code.

*(d)    U.S. Trustee Fee Claims*

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. The U.S. Trustee shall not be required to file any proof(s) of claim regarding quarterly fees.

**Section 3.03    Impaired/Voting Classes of Claims against and Equity Interests in the Debtors**

(a)    **Other Priority Claims (collectively, "Class 1 Claims").**

<u>Classification</u>:  Class 1 Claims consist of all Other Priority Claims against the Debtors.

<u>Treatment</u>:  Except to the extent that an Allowed Priority Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Other Priority Claim, each Holder of an Allowed Priority Claim shall receive payment in full, in Cash, through quarterly installment payments made by the Liquidating Trustee beginning on June 30, 2021 and ending on the earlier of (i) payment in full of the Allowed Other Priority Claim, (b)

14

five years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code.

Voting: Class 1 Claims are Impaired by the Plan. Each Holder of an Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

(b) **Secured Claims (collectively, "Class 2 Claims").**

Classification: Class 2 Claims consist of all Secured Claims against the Debtors.

Treatment: To the extent of the Debtors' right, title or interest to the Assets securing such Secured Claims, a Holder of an Allowed Secured Claim shall receive, at the election of the Liquidating Trustee (a) Cash in the amount of such Holder's Allowed Secured Claim in one payment on the later of the Effective Date or as soon thereafter as is practicable or the date such Claim becomes an Allowed Claim by Final Order (or as soon as reasonably practicable thereafter) or (b) such Holder shall receive its Collateral on the Effective Date or as soon thereafter as is practicable. Any deficiency amount related to a Class 2 Claim shall be treated as a Class 5 Allowed General Unsecured Claim. Alternatively, such Holder shall receive such other less favorable treatment as the Debtors and such Holder agree upon in writing.

Voting: Class 2 Claims are Unimpaired by the Plan and are deemed to accept the Plan.

(c) **DIP Lender Claims (collectively, the "Class 3 Claims")**

Classification: Class 3 Claims consist of the DIP Lender Claims against the respective Debtors.

Treatment: Holders of DIP Lender Claims or their designees shall receive the Lender Settlement Participation in full satisfaction of the DIP Lender Claims. The portion of the Lender Settlement Participation payable to the Holders of DIP Lender Claims or their designees shall be equal to the amount of the Lender Settlement Contribution Amount paid by the Holders of DIP Lender Claims or their designees.

Voting: Class 3 Claims are Impaired by the Plan. Each Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

(d) **Prepetition Lender Claims (collectively, "Class 4 Claims").**

Classification: Class 4 Claims consist of all Prepetition Lender Claims against the respective Debtors.

Treatment: Holders of Prepetition Lender Claims or their designees shall receive the Lender Settlement Participation in full satisfaction of the Prepetition Lender Claims. The portion of the Lender Settlement Participation payable to the Holders of Prepetition Lender Claims or their designees shall be equal to the amount of the Lender Settlement Contribution Amount paid by the Holders of Prepetition Lender Claims or their designees.

15

<u>Voting</u>:  Class 4 Claims are Impaired by the Plan.  Each Holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

(e)  **General Unsecured Claims (collectively, "Class 5 Claims").**

<u>Classification</u>:  Class 5 Claims consist of all General Unsecured Claims against the Debtors.

<u>Treatment</u>:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment and in exchange for each Class 5 Claim, a Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of any remaining Liquidating Trust Assets after providing for the payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims; provided, that the Holders of Class 3 Claims and Class 4 Claims shall receive 50% of all distributions to Holders of Class 5 Claims until the Lender Settlement Contribution Amount is paid in full.

<u>Voting</u>:  Class 5 Claims are Impaired by the Plan.  Each Holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

**Section 3.04   Impaired/Non-Voting Classes of Claims against and Equity Interests in the Debtors**

(a)  **Equity Interests (collectively, "Class 6 Equity Interests").**

<u>Classification</u>:  Class 6 Equity Interests consist of all Equity Interests in the Debtors.

<u>Treatment</u>:  Class 6 Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

<u>Voting</u>:  The Holders of Class 6 Equity Interests are deemed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(b)  **Reservation of Rights Regarding Claims and Equity Interests**

Except as otherwise explicitly provided in the Plan, nothing herein shall affect the Debtors' or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**Section 3.05   Lender Settlement Contribution Amount**

The DIP Lenders, the Prepetition Lenders and/or their designees shall pay the Lender Settlement Contribution Amount to the Debtors' Estates in accordance with the terms of the Lender Settlement Order.  The DIP Lenders, the Prepetition Lenders and/or their designees shall recover the amount of the Lender Settlement Contribution Account in their capacities as Holders of Class 3 Claims and Class 4 Claims as set forth in Sections 3.03(c)-(d) above.  For the avoidance of doubt, the DIP Lenders, the Prepetition Lenders, and their designees shall not be required to file

16

any proof of claim or application for allowance of the Lender Settlement Contribution Amount, and the Lender Settlement Contribution Amount shall be an Allowed Claim.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

### Section 4.01   Impaired Classes of Claims and Equity Interests Entitled to Vote

Only Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan are entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the votes of Holders of Claims in Classes 1, 3, 4, and 5 shall be solicited with respect to the Plan.

### Section 4.02   Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims or Equity Interests in such Class that have timely and properly voted to accept or reject the Plan.

### Section 4.03   Presumed Acceptance by Unimpaired Class

Holders of Class 2 Claims are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, Holders of Class 2 Claims are deemed to have accepted the Plan, and the votes of such Holders shall not be solicited.

### Section 4.04   Presumed Rejection by Impaired Classes

Holders of Class 6 Equity Interests are Impaired under the Plan.  Under section 1126(g) of the Bankruptcy Code, Holders of such Impaired Claims and Equity Interests are conclusively presumed to have rejected the Plan, and the votes of Holders of such Impaired Claims and Equity Interests shall not be solicited.

### Section 4.05   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### Section 4.06   Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted

from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V:
## THE LIQUIDATING TRUST

### Section 5.01   Sources of Consideration for Plan Distributions

Cash and the other Liquidating Trust Assets shall be used to fund the Distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims provided herein.

### Section 5.02   The Liquidating Trust

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to be satisfied with post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets.

The Liquidating Trust shall be established solely for the purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall hold the Liquidating Trust Assets pursuant to the terms of this Plan and the Liquidating Trust Agreement by engaging in the following activities: (a) pursuing the Causes of Action retained by the Liquidating Trust; (b) making all required Distributions to the beneficiaries as provided for under the Liquidating Trust Agreement; and (c) taking other actions as may be necessary to effectuate any of the foregoing. The Liquidating Trust will not hold itself out as an investment company and will not conduct a trade or business. At no time shall the Liquidating Trust control or operate the business of the Debtors or any assets of the Debtors other than the Liquidating Trust Assets.

### Section 5.03   Liquidating Trust Board

The Liquidating Trust will be advised by the "Liquidating Trust Board," which shall initially consist of five voting members designated by the Creditors' Committee

### Section 5.04   Appointment and Termination of the Liquidating Trustee

The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective on the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall continue for a term terminating on the earlier to occur of (a) all of the Liquidating Trust Assets have been distributed pursuant to this Plan and the Liquidating Trust Agreement, (b) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets

or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, (c) all Distributions required to be made by the Liquidating Trustee under this Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed two (2) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust Board may not terminate the Liquidating Trustee for any reason without approval by the Bankruptcy Court. The Liquidating Trust Board may bring a motion on proper notice to the Liquidating Trustee and its counsel for removal of the Liquidating Trustee for, among other reasons: (1) fraud, gross negligence, or willful misconduct in connection with the affairs of the Liquidating Trust, (2) for such physical or mental disability as substantially prevents the Liquidating Trustee from performing the duties of Liquidating Trustee in accordance with this Plan or the Liquidating Trust Agreement, or (3) for cause, which shall include a breach of fiduciary duty or an unresolved conflict of interest.

## Section 5.05   Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest

The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Liquidating Trust Agreement intend that the Liquidating Trustee take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.

For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by each Debtor of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtors and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Liquidating Trust Agreement), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such beneficiaries interest in the Liquidating Trust Assets. Accordingly, the Liquidating Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a)

19

and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Liquidating Trust.

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidating Trustee may timely elect to (i) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties and the Liquidating Trustee shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Liquidating Trust Assets and shall pay any federal, state and local income taxes attributable to the Liquidating Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Distribution Reserve Account, under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

## Section 5.06   Responsibilities of Liquidating Trustee

The responsibilities of the Liquidating Trustee, which shall be discharged in accordance with the terms of the Plan and the Liquidating Trust Agreement, shall include, but shall not be limited to, the following:

(a)      Administering, liquidating, and monetizing the Liquidating Trust Assets;

(b)      Objecting to and resolving Claims and Disputed Claims;

(c)      Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Liquidating Trust Assets;

(d)     Making Distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(e)     Preparing and filing post-Effective Date operating reports;

(f)     Filing appropriate tax returns in the exercise of its fiduciary obligations;

(g)     Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and

(h)     Taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

To the extent necessary or appropriate, the Liquidating Trustee shall be deemed to be a judicial substitute for Causes of Action assigned to the Liquidating Trust, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

**Section 5.07    Costs and Expenses of the Liquidating Trust**

To the extent the Liquidating Trust Assets are insufficient to pay the expenses of the Liquidating Trust and the Liquidating Trustee, then such expenses shall be reimbursed from the first dollars out of any proceeds that come into the Liquidating Trust before any Distribution to the beneficiaries of the Liquidating Trust; provided, however, the Liquidating Trust expenses shall be subject to the procedures and review set forth in the Liquidating Trust Agreement.

**Section 5.08    Bonding of Liquidating Trustee**

The Liquidating Trustee shall be obligated to obtain a bond in an amount to be determined by the Court, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

**Section 5.09    Fiduciary Duties of the Liquidating Trustee**

Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of the beneficiaries of the Liquidating Trust.

**Section 5.10    Liability, Indemnification of the Liquidating Trust Protected Parties**

The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other Liquidating Trust Protected Parties or the member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Parties other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his, her, or its functions, and in his, her, or its sole and absolute discretion, consult with his, her, or its attorneys, accountants, financial advisors, and agents.  Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his, her, or its attorneys, accountants, financial advisors, and agents, and his, her, or its determination not to do

21

so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that such indemnification shall be limited to the Liquidating Trust Assets and provided further that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

## Section 5.11    Full and Final Satisfaction Against Liquidating Trust

On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in exchange for all Claims or Equity Interests against the Liquidating Trust.

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

### Section 6.01    Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

### Section 6.02    Dissolution and Boards of the Debtors and Officers

As of the Effective Date: (i) the existing boards of directors and/or boards of managers of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, general partners, limited partners, shareholders, and members and any all remaining officers, managers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the general partners, limited partners, shareholders

or members of such Debtor, or the officers and directors of such Debtor; and (ii) all actions or decisions that would otherwise be made by such directors and/or managers under otherwise applicable law may be taken and made by the Liquidating Trustee. Notwithstanding anything contained in this section, all Claims and Causes of Action against any director or officer of the Debtors, whether current or former, are hereby preserved.

On the Effective Date, all Professionals shall be deemed to have completed their services unless they are expressly retained by the Liquidating Trustee, but they shall be able to file final applications for Professional Fee Claims through the Effective Date as provided for in this Plan.

## Section 6.03   Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments (including deeds, leases, assignments or other instruments of conveyance), applications for permit transfer or renewal or other regulatory authorizations, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any Court Order authorizing the sale or other transfer of the Debtors' assets, including, without limitation, the Sale Order, without the need for any further Bankruptcy Court Order, approvals, authorization, or consents except for those expressly required pursuant to the Plan.

## Section 6.04   Preservation of Rights of Action

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to Article XI hereof, the Settlement Agreement, the Lender Settlement Order, the DIP Order, and the Sale Order), the Debtors reserve and, as of the Effective Date, assign to the Liquidating Trust, any and all Causes of Action, including without limitation any actions specifically enumerated in the Disclosure Statement. On and after the Effective Date, the Liquidating Trustee may pursue such Causes of Action in accordance with the Liquidating Trust Agreement.

Subject in all respects to Article XI of this Plan, the Debtors shall not release any Avoidance Actions, and the Liquidating Trustee shall be authorized and empowered to enforce any such Avoidance Actions on and after the Effective Date in accordance with the terms of the Plan and the Liquidating Trust Agreement.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

The Debtors reserve the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. Except as

otherwise provided by the Liquidating Trust Agreement, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court to the fullest extent permitted by section 1123 of the Bankruptcy Code and all other applicable law.

## Section 6.05   Closing of Debtors' Cases

For the avoidance of doubt, the closing of any Chapter 11 Case shall not have any effect, in any manner, on the Causes of Action that the Liquidating Trustee may assert in accordance with the Plan and the Liquidating Trust Agreement.  The jointly administered case of Hopedale Mining, LLC (20-12043) (the "Main Case") shall remain open and subject to the provisions of this Section 6.5. All Chapter 11 Cases, except for the Main Case, shall be deemed closed upon the Effective Date without further action or Court Order.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Assets contributed to the Liquidating Trust in accordance with Section 5.02 above and the Liquidating Trust Agreement have been liquidated and converted into Cash (other than those assets previously abandoned by the Debtors or abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Main Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms of this Plan.

## Section 6.06   Operations of the Debtors Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to manage their estates as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

## Section 6.07   Dissolution of the Creditors' Committee

On the Effective Date the Creditors' Committee shall be deemed dissolved and subject to Section 11.03 of this Plan, its members shall be deemed released of their duties, responsibilities and obligations, provided, however, that the Creditors' Committee shall remain in existence with respect to (a) any Professional Fee Claims; and (b) any appeals of the Confirmation Order or Professional Fee Claims.

## Section 6.08   Destruction of Books and Records

The Liquidating Trustee has the right to seek authority to destroy or abandon any books and records of the Debtors constituting Liquidating Trust Assets.  The Liquidating Trustee, however, shall not destroy or abandon any such books and records without obtaining prior approval of the Bankruptcy Court.

24

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 7.01   Executory Contracts and Unexpired Leases

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all Executory Contracts and Unexpired Leases to which the Debtor is a party on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Petition Date; (c) is a Purchased Asset under any Asset Purchase Agreement approved by the Sale Order, or any related agreement including the Permit Operating Agreement that was attached as Exhibit A-1 to the Sale Order) or (d) is the subject of a pending motion to assume or reject on the Confirmation Date.  The Confirmation Order shall not be deemed to reject any insurance policy (director & officer, health or otherwise) in which the Debtor is a beneficiary.  No order confirming this Plan or any Amendment thereto is intended to or shall constitute a modification of the terms of the Sale Order or any other order of the Bankruptcy Court authorizing the assumption or rejection of Executory Contracts or Unexpired Leases.

### Section 7.02   Claims Based on the Rejection of Executory Contracts and Unexpired Leases

The deadline for filing a Proof of Claim based upon the rejection of any Executory Contract or Unexpired Lease rejected under the Plan shall be 30 days after the Effective Date; provided, however, that nothing in this Section 7.02 shall extend any Bar Date applicable to an Executory Contract or Unexpired Lease that expired before Confirmation.

## ARTICLE VIII:
## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 8.01   Calculation of Amounts to be Distributed

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trustee, on behalf of the Debtors or the Liquidating Trust, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VIII.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

25

**Section 8.02    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

*(a)    Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Debtors or the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

*(b)    Delivery of Distributions in General*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Liquidating Trustee's reasonable discretion, be deemed to have been made by the Liquidating Trustee on the Effective Date, unless the Liquidating Trustee and the applicable Holder of such Claim agree otherwise.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.    Distributions

On and after the Effective Date, the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trustee in the Distribution Reserve Account and distributed on the next Distribution Date that occurs after such Claim is Allowed in accordance with this Plan and the Liquidating Trust Agreement. In accordance with the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

*(c)    Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than

26

$5,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to any such Holder is less than $100.00, in which case such Distribution shall revert to the Liquidating Trust for distribution to other Holders of Allowed Claims.

*(d)    Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtors or the Liquidating Trustee, as applicable, has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without accrual of interest during that time; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 120 days from the date the initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be settled, compromised, and forever barred.

*(e)    Charitable Contributions*

After the final Distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash is less than $10,000, the Liquidating Trustee may donate such amount to one or more charities or philanthropic endeavors as chosen by the Liquidating Trustee, in consultation with the Liquidating Trust Board; provided that such philanthropic endeavors shall be non-profit.

*(f)    Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

**Section 8.03   Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Debtors, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan and Liquidating Trust Agreement shall be subject to any such withholding and reporting requirements. Each Creditor is required to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution.  If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution and the Claim of such Creditor shall be forever barred.

**Section 8.04    Claims Paid or Payable to Third Parties**

*(a)      Claims Paid by Third Parties; Recourse to Collateral*

The Debtors or the Liquidating Trustee, as applicable, shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trust, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

*(b)      Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

*(c)*     *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, and the rights of the Debtors under any such insurance policies shall vest in the Liquidating Trustee as of the Effective Date.

**ARTICLE IX:**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND EQUITY INTERESTS**

**Section 9.01   Resolution of Disputed Claims**

*(a)*     *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

*(b)*     *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee shall have the authority to File objections to Claims or Equity Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise. For the avoidance of doubt the U.S. Trustee's right to object to Claims, including Professional Fee Claims and Claims asserted under section 503(b)(3) and (b)(4) of the Bankruptcy Code, is reserved. Any objections to Claims or Equity Interests shall be Filed on or before the Claims Objection Bar Date, as such date may be extended pursuant to the Plan.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Claims Estimation*

On and after the Effective Date, the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtors or the Liquidating Trustee, as applicable, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(d)    *Expungement or Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtors or the Liquidating Trustee, and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtors or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 9.02   Distribution Reserve Account**

Distributions of Liquidating Trust Assets with respect to Disputed Claims shall be deposited into the Distribution Reserve Account in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The amount deposited shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Board.  The Liquidating Trustee may, in consultation with the Liquidating Trust Board, invest any Cash that is withheld in the Distribution Reserve Account in accordance with the Liquidating Trust Agreement.  Notwithstanding any such

investment and the addition to Liquidating Trust Assets of any income earned in respect thereof, in the event such Claim ultimately becomes an Allowed Claim, nothing in this Plan or Liquidating Trust Agreement shall be deemed to entitle the holder of a Disputed Claim to postpetition or post-Effective Date interest on such Claim.

### Section 9.03    Distributions After Allowance

On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Liquidating Trustee, or such other disbursing agent, will (1) distribute to the holder of such Claim any property in the Distribution Reserve Account that would have been distributed to such beneficiary on the Distribution Dates on which distributions previously were made to beneficiaries if the Claim in issue had been an Allowed Claim (in whole or in part, as applicable) on such earlier Distribution Dates; and (2) distribute any remaining property held in the Distribution Reserve Account on account of any resolved Disputed Claim in accordance with this Plan and the Liquidating Trust Agreement.

After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will be distributed in accordance with this Plan and the Trust Agreement.

### Section 9.04    Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtors or the Liquidating Trustee (or the Notice and Claims Agent at, as applicable, the Debtors' or the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtors or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### Section 9.05    Amendments

After the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that a Claim may be amended by the Holder of such Claim without authority from the Bankruptcy Court solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

### Section 9.06    No Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed-to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date. Notwithstanding the foregoing, if Holders of Allowed

General Unsecured Claims receive a distribution of 100%, they shall be paid interest from the Petition Date until the date their Allowed General Unsecured Claims are paid in full at the federal judgment interest rate that was in effect on the Petition Date.

# ARTICLE X:
## RETENTION OF JURISDICTION

**Section 10.01  Retention of Jurisdiction**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(b)    hear and determine all applications for compensation and reimbursement of Professional Fee Claims; provided, however, that the payment of the fees and expenses of the Professionals of the Liquidating Trust incurred from and after the Effective Date shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any Causes of Action or the Plan;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g)      hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(h)      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)      hear and determine any matters arising in connection with or relating to the Plan, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(l)      enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases;

(m)      except as otherwise limited herein, recover all Assets, wherever located;

(n)      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(p)      enter a final decree closing these Chapter 11 Cases.

**Section 10.02  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 10.01 of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter

## ARTICLE XI:
## SETTLEMENT, RELEASES, INJUNCTIONS AND EXCULPATIONS

**Section 11.01 Debtors Will Not Receive Discharge**

Notwithstanding anything to the contrary herein, the Debtors shall not receive a discharge under the Plan.

**Section 11.02 No Releases by Debtors**

SUBJECT TO SECTION 11.03 AND 11.04 BELOW, NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THE DEBTORS SHALL NOT RELEASE:

(A) ANY AND ALL CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, DERIVATIVE CLAIMS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE, IN LAW, AT EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE; OR

(B) ANY AND ALL AVOIDANCE ACTIONS AGAINST ANY PERSON.

PROVIDED THAT NOTHING HEREIN SHALL LIMIT THE RELEASES PROVIDED BY THE DEBTORS UNDER THE DIP ORDER, THE SALE ORDER, THE SETTLEMENT AGREEMENT OR THE LENDER SETTLEMENT ORDER.

**Section 11.03 Exculpation and Limitation of Liability**

Notwithstanding anything to the contrary herein, the Debtors, its Professionals retained in the Chapter 11 Cases, its officers, directors, managers, or employees existing as of the Petition Date, the Creditors' Committee, individual members of the Creditors' Committee, and Professionals for the Creditors' Committee, and the Released Parties shall not have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Cases, formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, the Sale Agreements, the Sale Transaction, or the Settlement Agreement, consummating the Plan, the Sale Agreements, the Sale Transaction, or the Settlement Agreement, or the administration of the Plan or the property to be distributed under the Plan, unless it shall be determined in a Final Order to have constituted willful misconduct or gross negligence; provided, however, that for avoidance of doubt, nothing herein shall provide any exculpation

34

or release any holder of an Equity Interest or any other current or former officer, director, manager, or employee of the Debtors for conduct occurring prior to the Petition Date.

**Section 11.04  Lender Release by Holders of Claims Voting in Favor of Plan**

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties in the Chapter 11 Cases, including pursuant to the Settlement Agreement and the Lender Settlement Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, on and after the Effective Date, any Person voting in favor of the Plan (A "<u>Releasing Party</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released the Released Parties from any and all claims, debts, obligations, promises, controversies, actions, suits, causes of action, damages, remedies, expenses, demands and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, (A) the Committee Initial Challenges, (B) the Prepetition Debt and any payments received by the Prepetition Secured Parties in respect thereof, (C) the DIP Facility and any payments received by the DIP Secured Parties in respect thereof, (D) the Debtors or their operations, (E) the Chapter 11 Cases, (F) the Debtors' restructuring, (G) any investment in the Debtors or the purchase, sale, transfer, or rescission of the purchase or sale of any security, asset, right, or interest of the Debtors, (H) any action or omission with respect to any indebtedness under which the Debtors are or were a borrower or guarantor, or any equity investment in the Debtors, including without limitation the Prepetition Debt and the DIP Facility and any claims or causes of action (including lender liability claims) in respect thereof, (I) the subject matter of, or the transactions or events giving rise to, any claim or interest restructured in the Chapter 11 Cases, (J) the formulation, preparation, dissemination, or negotiation of the (i) APA and any other materials executed or entered into in connection with the Sale Closing, (ii) the Prepetition Credit Documents, (iii) the DIP Documents, (iv) the Settlement Agreement, and (v) any contract, instrument, release, or other agreement or document (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the restructuring) created or entered into in connection with the Sale Closing, the DIP Facility, the Prepetition Debt, and the Chapter 11 Cases, (K) any action taken in furtherance of the Sale Closing, and (L) any Challenge; *provided further*, that the DIP Secured Parties and the Prepetition Secured Parties are also released from any and all claims, debts, obligations, promises, controversies, actions, suits, causes of action, damages, remedies, expenses, demands and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the APA, the Sale Transaction, the Auction, or otherwise related in any way to the sale of the Debtors' assets or assignment of the Assigned Contracts to the Stalking Horse Bidder, except for rights

and claims of the Debtors under the APA, agreements related to the APA, or the Sale Order, as specified in the Lender Settlement Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Releasing Parties from asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

## Section 11.05 Lender Release by Debtors and Estates

The releases of the Released Parties by the Debtors and the Estates approved by the DIP Order, the Sale Order, the Settlement Agreement and the Lender Settlement Order are hereby incorporated into this Plan and approved in all respects.

## Section 11.06 Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 11.03 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 11.03) AND THE RELEASE PURSUANT TO SECTIONS 11.04 AND 11.05 HEREOF (BUT ONLY TO THE EXTENT OF THE RELEASES PROVIDED IN SECTION 11.04 AND 11.05); OR (3) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE RELEASED PARTIES, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE RELEASED PARTIES, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR

36

**WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE RELEASED PARTIES, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF (UNLESS PREVIOUSLY ASSERTED) OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE RELEASED PARTIES, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, THE RELEASED PARTIES, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**Section 11.07  Setoffs**

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, and Causes of Action of any nature that the Debtors'

Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under section 502(d) of the Bankruptcy Code, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, and Causes of Action that the Debtors' Estates may possess against such Holder, provided, further, that the Holder of a Claim or Equity Interest may contest such set off by the Debtors or the Liquidating Trustee, as applicable, in the Bankruptcy Court or any other court of competent jurisdiction. In no event shall any Holder of Claims or Equity Interests be entitled to set off any Claim or Equity Interest against any claim, right, or Cause of Action of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## Section 11.08  Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

## ARTICLE XII: CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

## Section 12.01  Conditions to Effective Date

(a)        Conditions Precedent to Effective Date of the Plan.  The Plan shall not become effective unless and until the Effective Date occurs.  The Effective Date is subject to the following conditions precedent: (i) the Confirmation Order shall become a Final Order; (ii) all documents useful and necessary to effectuating the Plan are executed and delivered to the parties hereto and all conditions to the effectiveness of such documents have been met; and (iii) the Debtors have received all authorizations, consents, approvals, rulings, opinions, and documents that are necessary to implement the Plan.

(b)        Waiver of Conditions.  The conditions precedent to the Effective Date may be waived, in whole or in part, by the Debtors, with the consent of the Creditors' Committee, at any time, without notice, and without an order from the Bankruptcy Court or any other affirmative action other than proceeding to consummate the Plan.  The failure of the Debtors to exercise any of foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

**Section 12.02  Notice of Occurrence of the Effective Date**

The Debtors or Liquidating Trustee shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereafter; provided, however, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

**Section 12.03  Consequences of Non-Occurrence of Effective Date**

If the Confirmation Order is vacated prior to the Effective Date, (a) the Plan shall be null and void in all respects; and (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; provided, however, that for avoidance of doubt, the Settlement Agreement and the Lender Settlement Order shall not be impacted.

**Section 12.04  Substantial Consummation**

Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

**ARTICLE XIII:**
**MISCELLANEOUS PROVISIONS**

**Section 13.01  Liquidating Trustee Professionals**

The Liquidating Trustee may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to them after the Effective Date.

**Section 13.02  Modifications and Amendments**

Subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; provided, however, that any provision of the Plan impacting or affecting the DIP Lenders or the Prepetition Lenders other than in accordance with the terms of the Settlement Agreement shall be in form and substance acceptable to the DIP Lenders or Prepetition Lenders, as applicable. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with section 1127 of the Bankruptcy Code and applicable law.

**Section 13.03  Continuing Exclusivity and Solicitation Period**

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtors and the Creditors' Committee shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Plan and to solicit acceptances thereof.

**Section 13.04  Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 13.05  Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including, but not limited to, the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests.

**Section 13.06  Revocation, Withdrawal or Non-Consummation**

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.   If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Action or other Causes of Action by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity; provided, however, that the Settlement Agreement and the Lender Settlement Order shall not be impacted.

**Section 13.07  Notices**

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to the Debtors:
>
> > Frost Brown Todd LLC
> > Douglas L. Lutz
> > A.J. Webb
> > 3300 Great American Tower
> > 301 East Fourth Street
> > Cincinnati, Ohio 45202
> > Telephone:  (513) 651-6800
> > Facsimile:  (513) 651-6981
> > dlutz@fbtlaw.com
> > awebb@fbtlaw.com
>
> If to the Creditors' Committee:
>
> > Foley & Lardner LLP
> > Geoffrey S. Goodman
> > 321 North Clark Street
> > Suite 2800
> > Chicago, Illinois 60654
> > Telephone:  (312) 832-4500
> > ggoodman@foley.com
> >
> > and
> >
> > Barber Law PLLC
> > T. Kent Barber
> > 2200 Burrus Drive
> > Lexington, KY 40513
> > Telephone: (859) 296-4372
> > Email: kbarber@barberlawky.com

**Section 13.08  Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**Section 13.09  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Ohio shall govern the construction and

implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

### Section 13.10  Exhibits

All exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 13.07 of the Plan.   To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

### Section 13.11  Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.  To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

### Section 13.12  Exemption

Under section 1145 of the Bankruptcy Code, the issuance of the beneficial interests in Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

### Section 13.13  Substitution of the Liquidating Trust for the Debtors

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trustee to file motions or substitutions of parties and counsel.

Dated:  January 13, 2021                **HOPEDALE MINING LLC AND**
                                        **ITS AFFILIATED DEBTORS AND DEBTORS-**
                                        **IN-POSSESSION**


                                        By: */s/ Richard A. Boone*
                                        Richard A. Boone, President and Chief Executive
                                        Officer of Debtors and Debtors-in-Possession


                                        **OFFICIAL COMMITTEE OF UNSECURED**
                                        **CREDITORS OF HOPEDALE MINING LLC**
                                        ***ET AL.***

                                        */s/ Geoffrey S. Goodman*
                                        By: Geoffrey S. Goodman
                                        Counsel to the Official Committee of Unsecured
                                        Creditors of Hopedale Mining LLC, *et al.*, as
                                        authorized signatory

4822-8661-6272v5